**PHILLIPS PETROLEUM COMPANY, a corporation, Plaintiff and Stakeholder,**

**v.**

**RIVERVIEW GAS COMPRESSION COMPANY, a partnership composed of Marion Mitchell Travis, et al., Defendants.**

**Civ. A. No. 2–1365.**

United States District Court,
N. D. Texas,
Amarillo Division.
March 11, 1974.

C. J. Roberts, Jack Ritchie, Thomas L. Cubbage, II, Amarillo, Tex., for plaintiff.

Paul H. Smith, Cox, Smith, Smith, Hale & Guenther, Inc., San Antonio, Tex., for Pensco, Inc. and National Bank of Commerce of San Antonio.

Robert J. Hearon, Jr., Graves, Doughtery, Gee, Hearon, Moody & Garwood, Austin, Tex., for William Mark Day, Jr.

Maston C. Courtney, Culton, Morgan, Britain & White, Amarillo, Tex., for Riverview Gas Compression Co.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above-styled cause was heard by the court on March 6, 1974 in Amarillo, Texas and all parties were represented in open court by counsel. This Memorandum Opinion shall serve as the court's Findings of Facts and Conclusions of Law. The admissions and stipulations contained in the Pre-Trial Order on file in this case are incorporated herein as part of the Findings of Fact. A summary description of the circumstances attending this case is given below, but the court refers to the above-described parts of the Pre-Trial Order for further specific findings of fact.

This case was instituted by a Complaint in Interpleader filed by plaintiff, Phillips Petroleum Company. The Complaint alleged that Phillips was a stakeholder of a certain sum of money in the amount of $275,220.53 upon which conflicting claims were made by the various defendants. Plaintiff alleged that it was uncertain as to which of the defendants were entitled to the fund, so it interplead all the claimants to the fund in the present action for the purpose of having the court decide who was entitled to receive the money and for the purpose of releasing itself from any further liability in relation to the fund.

This fund represents payments which accrued under casinghead gas contracts executed between Phillips and some of the defendants as the sellers for the purpose of purchasing natural gas produced from tracts of land in Hutchinson County, Texas. Phillips, between June 26, 1955 and September 30, 1970, resold the gas purchased under the casinghead contracts to third parties at a price above the maximum then allowed by the Federal Power Commission. The lease owners then received from Phillips the sums then allowed by the Federal Power Commission and the difference between the maximum allowed by the Federal Power Commission and the actual sales price was held subject to refund to the purchasers by Phillips under Section 4(e) of the Natural Gas Act or, if the Federal Power Commission subsequently approved the higher sales price, Phillips would then be required to pay such difference to the original producers. Under the casinghead contracts Phillips was to pay defendants-sellers a sum computed as a percentage of sales to third party purchasers. But, as above stated, Phillips only paid the defendants-sellers a percentage of the "firm proceeds," which were the portions of the sales prices not subject to possible refund. Phillips had petitioned the Federal Power Commission for a ruling sustaining the sales prices in the amounts by which they exceeded the published maximum. Opinion 586 of the Federal Power Commission, dated September 18, 1970 which had sustained a portion of the excess sales prices, became final on October 28, 1972. Under that decision, Phillips was then bound to recompute the amounts due the sellers under the casinghead contracts and pay the additional amounts to them. However, between June 7, 1954 and September 30, 1970 the title to the mineral estate of the tracts in question changed hands several times. The dispute over the fund in Phillips' possession arose because of the changes in ownership.

The dispute among the various defendants as to entitlement to the fund has now been settled among the parties. Therefore, the only question left before the court is whether Phillips is liable for interest on the moneys they have held as a stakeholder for the past several years. Each of the defendants named by Phillips in their Complaint, except for two who disclaimed any interest in the fund, has filed a counterclaim against Phillips for interest on the portion of the fund which was sustained by the Federal Power Commission. Phillips has filed a Motion to Dismiss the counterclaims.

As an initial determination, this court finds that the counterclaims are proper under Rule 13, Federal Rules of Civil Procedure, and that the court has jurisdiction to hear and determine the counterclaims. Phillips' technical argument that they are not an "opposing party" within the meaning of Rule 13 is not persuasive. Phillips in its Complaint prays that it be discharged from all liability in connection with the fund, which would of course include discharge from any liability for interest. Phillips is asking for affirmative relief against the defendants and, therefore, this court feels compelled to characterize them as opposing parties for the purposes of Rule 13, *supra*. Further, the court finds that defendants' counterclaims are "compulsory" within the meaning of Rule 13(a). Clearly, the claims for interest arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Accordingly, there is no jurisdictional amount requirement as to the counterclaims and the court has ancillary jurisdiction over them. Childress v. Cook, 245 F.2d 798 (5th Cir. 1957).

The substance of defendants' position with regard to the interest question is that Phillips is liable for interest *eo nomine* on the fund in order to place defendants on a parity with Phillips under the gas purchase agreements, to compensate defendants for Phillips' use of their money between the date of accrual and the date it became payable and to prevent the unjust enrichment of Phillips. Phillips' position, essentially, is that de-

fendants' right to this fund did not accrue until October 28, 1972, that, even upon accrual of defendants' right to the fund, Phillips was unable to safely disburse the fund because of the conflicting claims thereon and that, therefore, Phillips should not be required to pay interest during any of the period in which it held the fund.

■■ The law is not entirely clear in Texas whether a stakeholder who is uncertain to whom to pay a fund because of conflicting claims to the fund is liable to pay interest to the prevailing claimant for use or possession of the fund during the period of uncertainty. There is a general rule that interest will not be allowed on a fund while it is in litigation. 47 C.J.S. Interest § 25. Bergendahl v. Blanco Oil Co., 440 S.W.2d 81 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.), was a suit by the life tenant against the remaindermen to establish that the life tenant's interest in the mineral estate was subject to the application of the "open mine doctrine" and against the lessee oil companies for interest on royalties on oil produced from the mineral estate. The defendant oil companies held the royalties but did not invest them for the benefit of the royalty owners. The court held that the oil companies were not under a duty to invest the retained royalties and were not liable for interest thereon because no proper demand was ever made upon them for the funds by any of the other parties. More in point is the Court of Appeals' decision in the Louisiana diversity case of Gulf Oil Corporation v. Olivier, 412 F.2d 938 (5th Cir. 1969). In that case the plaintiff sued Humble Oil to recover overriding royalty payments under an oil and gas lease. Humble contended that it could not safely make payments under its assignment of overriding royalties to Olivier because of a conflicting lease which carved out overriding royalties to a third party. Humble filed a motion for interpleader of the parties in the conflicting chain of title. The motion was granted by the District Court because it found that Humble could not safely make the payments until title to the lease had been adjudicated. However, the District Court awarded interest on the interplead fund to the prevailing royalty owner. The Court of Appeals reversed this award of interest on the ground that it was inconsistent with the lower court's finding that Humble could not safely disburse the funds. The court flatly held that Humble correctly withheld the payments pending the outcome of the litigation. The case at bar is closely analogous to Olivier and this court is persuaded by its reasoning. Although the ownership of the fund in question has not been in litigation during the entire existence of the fund, there has been a continual dispute over it up through the present. Until the October 28, 1972 affirmance of the Federal Power Commission's ruling allowing the excess charges, there was genuine doubt in Phillips' mind whether the money was to be refunded to the third party purchasers or disbursed to the sellers under the casinghead contracts. And since at least April 2, 1971 through the present there has been a dispute over the fund among the various defendants herein. Thus at no time during its existence has this fund been free from conflicting claims to its ownership.

Similarly, in Atwood v. Humble Oil & Refining Company, 338 F.2d 502 (5th Cir. 1964), the Court of Appeals upheld a decision of the trial court that the lessor under an oil and gas lease was not entitled to interest on funds retained by the lessee because of the trial court's finding of fact that:

"[t]he lessee paid plaintiffs all sums due them under the lease as early as it reasonably could do so under all the circumstances associated with and resulting from the institution and prosecution by the plaintiffs of this and earlier litigation asking for cancellation or attacking the validity of the lease and seeking to set aside the partition of the King Estate and the [2023] Trustee's computation of frac-

tional division of interest among the persons sharing therein."

Defendants rely heavily on Kishi v. Humble Oil & Refining Company, 10 F. 2d 356 (5th Cir. 1926), for their contention that a stakeholder is liable to the ultimate owner for interest for the use of the money held by him. *Kishi*, however, can be distinguished from the present case. Ashland Oil & Refining Company v. Staats, Inc., 271 F.Supp. 571 (D.Kansas 1967), established that a party in the position occupied by defendants in this case has no right to receipt of such funds until it is finally determined that the money does not have to be refunded to the purchaser. The court there stated that:

"Defendants' right to royalties from those receipts can be no greater than the lessee's right to the monies from which those royalties derive. Ashland has no final enforceable right to these funds, for they have not been approved, and may be rescinded. Plaintiff holds them subject to refund, and are responsible for any refund which may be ordered. We perceive no ground on which Ashland should be compelled to pay out sums, for the refund of which it may be liable, and as to which its own right is not finally determined, to royalty owners whose own right to royalties from those funds will be finally determined only when Ashland's own right is determined."

Unlike the *Kishi* situation, there is a judicial determination governing the present case that defendants had no right to possession of the fund until October 28, 1972. And there is a general rule in Texas that interest is not payable until the debt on which it accrues becomes due. 33 Tex.Jur.2d Interest § 5 (1962). Here, the sum could not have become due to defendants until October 28, 1972. Further, a dispute over the fund existed among the defendants herein from sometime prior to October 28, 1972 until the recent settlement of that dispute. Thus, during none of the time that Phillips held the fund would it have

been safe for them to disburse the money to the defendants.

At all times during its existence this fund has been the subject of conflicting claims of ownership. Logic and the rules of law discussed above persuade this court that Phillips was under no duty to invest the fund for the benefit of defendants or to pay interest thereon. Accordingly, it is here ordered that any recovery on defendants' counterclaims for interest shall be denied.

The court further notes that the defendant-claimants were aware of the existence of this fund and the evidence does not show that any of them made a demand that the money be placed in the Registry of this court. The ruling in this case should not be construed as a denial of interest in other cases where the claimants had no knowledge that the funds were available for payment and where the stakeholder may have failed to reasonably notify the owners or claimants that the funds were available for distribution under the ruling of the Federal Power Commission.

■ Plaintiff further prayed for costs and a reasonable attorney's fee. *Olivier, supra*, also considered this question. The court, in affirming the trial court's denial of these items, there stated that "[t]hough costs and attorneys' fees are ordinarily awarded to the disinterested stakeholder in an interpleader proceeding, the matter is ultimately vested within the sound discretion of the trial judge." It is the court's opinion that the circumstances surrounding this case do not call for the award of these sums. As a matter of discretion, therefore, the court hereby denies Phillips' claim for costs and a reasonable attorney's fee.

The attorneys for the defendants are directed to prepare a proposed judgment in accordance with the above, submit such instrument to attorneys for the plaintiff for approval as to form, and then present such approved judgment to the court in Lubbock, Texas on or before March 25, 1974.